**Hiroko HAVEKOST; David W. Sutton; Ron Haglund; Jerry Crowley, Plaintiffs–Appellees,**

v.

**UNITED STATES DEPARTMENT OF the NAVY, et al., Defendant,**

**and**

**Jovito Banzon, Defendant–Appellant.**

No. 90–35229.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 1990.

Decided Feb. 1, 1991.

Frank A. Rosenfeld, Atty., U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

Guy William Beckett, Weinstein, Hacker, Matthews, & Young, Seattle, Wash., for plaintiffs-appellees.

Before GOODWIN, Chief Judge,
WRIGHT and NOONAN, Circuit Judges.

GOODWIN, Chief Judge:

Jovito Banzon defended this civil rights action on the basis of qualified immunity. He appeals the order which denied the defense, and we reverse.

At the time of the incident giving rise to this action, Banzon was the officer in charge of the commissary at the Puget Sound Naval Station ("Puget Sound") in Bremerton, Washington. Plaintiff Hiroko Havekost worked as a grocery bagger in the commissary. When Banzon terminated her permission to work, Havekost sued Banzon in his individual capacity under the theory that *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), created a cause of action for violation of her speech rights under the first amendment. Because the facts establish that Banzon's action did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known," he has qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

 Because a denial of summary judgment is not ordinarily a final decision within the meaning of 28 U.S.C. § 1291 (1988), the denial is usually not reviewable on appeal. *Roth v. Veteran's Admin.*, 856 F.2d 1401, 1404 (9th Cir.1988). In *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1375–76 (9th Cir.1990), however, this court recognized a limited exception to that rule: when a district court's denial of summary judgment on a qualified immunity claim turns on a purely legal question, that denial is appealable as a "final decision" within the meaning of § 1291. The relevant facts in this case are not disputed. Rather, the case turns on a purely legal question: whether Banzon violated clearly established constitutional protections. Accordingly, we exercise jurisdiction over Banzon's appeal.

Havekost's license to work as a grocery bagger was not an employment contract, but rather a revocable grant of permission to work for customer tips. By the terms of the license, Havekost and the other baggers were not "under the supervision, direction, or control of any employee of the Bremerton Commissary." A head bagger, elected by the baggers, acted as their supervisor and liaison to commissary management.

After Banzon took charge of the commissary in 1988, Havekost grew dissatisfied with what she and other baggers perceived to be Banzon's attempts to exercise direct supervisory authority over them. She objected to his insistence that baggers honor the Navy's newly implemented dress code for "employees." She also objected to Banzon's proposal to increase the number of baggers scheduled per shift and to hold baggers financially responsible for groceries missing or damaged by bagging or carryout operations. Havekost voiced these objections at a meeting attended by Banzon and fellow baggers.

Havekost next decided that the head bagger was failing to perform her duty to represent the baggers' collective interests to Banzon and initiated a petition for her discharge. The circulation of the petition apparently triggered a discussion between Havekost and Banzon, who then revoked Havekost's license.

As a federal official with authority to revoke the licenses of baggers, Banzon may assert the *Harlow* immunity defense "to protect the exercise of [his] discretion." *Allen v. Scribner*, 812 F.2d 426, 436 n. 21 (9th Cir.1987). To lose his entitlement under *Harlow*, the unconstitutionality of Banzon's revocation of Havekost's license must have been sufficiently clear at the time of the incident that a reasonable official would have known it. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). This rule serves to "protect[ ] government officials from charges that they knowingly violated standards that were in fact unknowable...." *Murray v. Gardner*, 741 F.2d 434, 439–40 n. 2 (D.C.Cir.1984).

Speech rights of government employees were established in *Pickering v. Board of*

*Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and refined in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Following *Pickering-Connick,* this circuit's decisions in *McKinley v. City of Eloy,* 705 F.2d 1110 (9th Cir.1983), and *Roth,* 856 F.2d at 1404, recognize that an individual may not be dismissed from public employment for exercising a "right to speak on issues of public importance." *Pickering,* 391 U.S. at 574, 88 S.Ct. at 1737.

Because Havekost was a licensee on the Navy's premises rather than a salaried employee, however, those cases are not directly on point. Havekost would have us apply the broad principle that the government may not deny a person a valuable· benefit "on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). Because protected speech must address a matter of public concern in the *Pickering-Connick* cases, an employee may have a steeper hurdle than a *Perry* plaintiff. The benefit Havekost asserts is the contractual right to earn tips as a bagger at the commissary. She argues that circulation of the petition constituted speech, and revocation of her license infringed that speech.

We are persuaded that the *Pickering-Connick* analysis would be appropriate in the present context. The Supreme Court's language in *Connick* strongly suggests that Havekost's ventilation of grievances did not have first amendment protection, even though Havekost was not an employee. *Connick* involved a deputy district attorney who voiced her objection to being transferred to another unit by circulating a questionnaire about internal office procedures regarding transfers and office morale. · *Connick,* 461 U.S. at 140–41, 103 S.Ct. at 1686–87. In rejecting Connick's first amendment claim, the Supreme Court stated forcefully that a federal court "is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at

147, 103 S.Ct. at 1690. The Court explained that,

> it would indeed be a Pyrrhic victory for the great principles of free expression if the Amendment's safeguarding of a public employee's right, as a citizen, to participate in discussions concerning public affairs were confused with the attempt to constitutionalize the employee grievance that we see presented here.

*Id.* at 154, 103 S.Ct. at 1694. Because Havekost's dispute, like that of the plaintiff in *Connick,* is nothing more than a workplace grievance, ruling for her would be inconsistent with the principle stated in *Connick.*

The content, form, and context of Havekost's speech in light of the entire record contain no hint of a matter of public concern. *Id.* at 147–48, 103 S.Ct. at 1690–91. In defining public concern, this court has stated that,

> [s]peech by public employees may be characterized as not of "public concern" when it is clear that such speech deals with individual personnel disputes and grievances and that the information would be of no relevance to the public's evaluation of the performance of governmental agencies. On the other hand, speech that concerns "issues about which information is needed or appropriate to enable the members of society" to make informed decisions about the operation of their government merits the highest degree of first amendment protection.

*McKinley,* 705 F.2d at 1114 (citations omitted). One critical inquiry is whether the employee spoke in order to bring wrongdoing to light or merely to further some purely private interest. *Breuer v. Hart,* 909 F.2d 1035, 1039 n. 5 (7th Cir.1990); *Schalk v. Gallemore,* 906 F.2d 491, 495 (10th Cir.1990); *Roth,* 856 F.2d at 1405–06. The Seventh Circuit has warned, however, that motive should not be used as a litmus test for public concern; rather, "content is the greatest single factor in the *Connick* inquiry." *Berg v. Hunter,* 854 F.2d 238, 243 (7th Cir.1988) (citations omitted), *cert. denied,* 489 U.S. 1053, 109 S.Ct. 1314, 103 L.Ed.2d 583 (1989).

Havekost's speech was as much a matter of public concern as would be the length and distribution of coffee breaks. The petition was circulated exclusively among the baggers; Havekost made no attempt to reach the general public, a factor considered relevant in other public concern cases. *See, e.g., Barkoo v. Melby,* 901 F.2d 613, 618–19 (7th Cir.1990) (suggesting that actual communication with the press on an issue of some public interest would indicate public speech). Furthermore, the petition arose out of an internal dispute over the Navy's dress code, scheduling, and responsibility for certain lost commissary profits. These matters are the minutiae of workplace grievances.

In contrast, speech on a matter of "public concern" has been found in the following Supreme Court cases: *Rankin v. McPherson,* 483 U.S. 378, 380, 386, 107 S.Ct. 2891, 2894, 2898, 97 L.Ed.2d 315 (1987) (on-the-job statement in favor of President Reagan's assassination made by employee of law enforcement agency); *Connick,* 461 U.S. at 149, 103 S.Ct. at 1691 (question by the assistant district attorney about whether her coworkers "ever [felt] pressured to work in political campaigns"); *Givhan v. Western Line Consolidated School Dist.,* 439 U.S. 410, 413, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) (complaints about school board policies and practices); *Mt. Healthy City School District Board of Ed. v. Doyle,* 429 U.S. 274, 282, 284, 97 S.Ct. 568, 573, 574, 50 L.Ed.2d 471 (1977) (memorandum given by a teacher to a radio station dealing with teacher dress and appearance); *Perry,* 408 U.S. at 595, 598, 92 S.Ct. at 2696, 2698 (legislative testimony of a state college teacher advocating that a particular college be elevated to four-year status); *Pickering,* 391 U.S. at 571–72, 88 S.Ct. at 1736–37 (high school teacher's criticism of Board of Education's allocation of school funds and methods of informing taxpayers about the need for additional revenue).

In this circuit, protected speech has been found in these cases: *Finkelstein v. Bergna,* 881 F.2d 702, 703, 706 (9th Cir.1989) (deputy district attorney's express opposition to candidate for district attorney of Santa Clara County); *Roth,* 856 F.2d at 1403, 1406 (former troubleshooter's allegations of waste, corruption, mismanagement, and inadequate safety at the Veteran's Administration Medical Center in San Francisco); *Allen v. Scribner,* 812 F.2d 426, 427–28, 431 (9th Cir.1987) (entomologist's allegation made to the press of breach of public trust by Mediterranean Fruit Fly Eradication Project management); *Anderson v. Central Point School Dist. No. 6,* 746 F.2d 505, 506–07 (9th Cir. 1984) (assistant football coach's proposal at an open school board meeting to restructure the district's athletic program); *McKinley,* 705 F.2d at 1112, 1114–15 (probationary employee's public criticism of police department for denying officers an annual raise).

Despite *Connick*'s unfavorable dicta, Havekost asserts that the partial protection provided to federal officials by *Pickering-Connick* would be inappropriate in her case because the Navy—by its own assertion—was not her employer. Presumably, Havekost believes that on-the-job speech deserves greater first amendment protection when made by an independent licensee than by a government employee. We see no reason, however, to create a special class of terminated positions whose holders can bring their workplace grievances to federal court as § 1983 claims.

*Pickering-Connick* immunity has been applied, moreover, in cases where an employer-employee relationship did not exist. *See, e.g., Smith v. Cleburne County Hosp.,* 870 F.2d 1375, 1381–84 (8th Cir. 1989) (surgeon denied staff privileges at hospital), *cert. denied,* —— U.S. ——, 110 S.Ct. 142, 107 L.Ed.2d 100 (1989); *Davis v. West Community Hosp.,* 755 F.2d 455, 460–62 (5th Cir.1985) (same). In *Smith,* the Eighth Circuit justified applying *Pickering-Connick* by underscoring the right of a public hospital "to regulate its medical staff in order to insure the delivery of adequate medical care to its patients." *Smith,* 870 F.2d at 1381. The Navy has a similar right to regulate its commissary staff.

We acknowledge that this case does not have all the *Smith* ingredients. For example, the Navy did not subject Havekost to an application process comparable to that in *Smith*. In addition, the terms of the license did not impose specific duties beyond complying with "all local, state, and federal government requirements as they affect self-employed individuals." Nevertheless, these differences do not in themselves indicate that application of *Pickering-Connick* would be improper here.

In *Mares v. Marsh*, 777 F.2d 1066 (5th Cir.1985), the Fifth Circuit held that an Army commissary bagger was not an employee for purposes of Title VII, 42 U.S.C. § 2000e *et seq.* (1988). The court considered the " 'economic realities' of the work relationship" and focused on " 'the extent of the employer's right to control the "means and manner" of the worker's performance....' " *Id.* at 1067 (quoting *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C.Cir.1979)). The court found significant the Army's lack of involvement in the hiring, firing, or supervision of the baggers; the absence of wages, medical leave, insurance or retirement benefits for the baggers; and the lack of Army input as to work arrangements and duty schedules. *Id.* at 1068–69. In *Mares*, the grocery bagging operations were virtually identical to those in this case, with one exception: unlike the Army in *Mares*, the Navy in this case retained the express right to revoke a bagger's license at will. *Mares* is therefore distinguishable. Even if we were to follow *Mares* and treat a commissary bagger as someone other than an "employee," the case does not hold that the first amendment is implicated in work-related grievances like Havekost's.

*Connick*'s express purpose was to keep public offices from being "run as ... roundtable[s] for employee complaints over internal office affairs." *Connick*, 461 U.S. at 149, 103 S.Ct. at 1691. Because Havekost's speech related primarily to a workplace grievance, we could not allow this action to proceed without placing this circuit in intolerable tension with *Connick*.

In sum, even if reversal is not required by the single fact that *Pickering-Connick*'s applicability to licensees remains an open question, and even though Havekost's claim may not have been frivolous, we cannot rule in her favor. The law was simply not sufficiently clear to warrant denying Banzon qualified immunity for his discretionary revocation of Havekost's license.

REVERSED AND REMANDED with instructions to dismiss the action.