Eileen HICKEY–McALLISTER, Plaintiff,

v.

BRITISH AIRWAYS, et al., Defendants.

No. 96 CV 4540.

United States District Court,
E.D. New York.

Sept. 26, 1997.

Warren Bennia, New York City, for Plaintiff.

Vincent Lipari, Asst U.S. Atty., Kenneth DiGia, New York City, for Defendants.

## OPINION AND ORDER

GERSHON, District Judge:

Challenging the revocation of the identification hologram issued to her by the United States Customs Service ("Customs Service") and her access to Customs Service security areas, plaintiff filed this action in September 1996. She sued her employer British Airways and Allan Smith, a fellow British Air-

ways employee (collectively, "the British Airways defendants"), as well as Secretary of the United States Department of the Treasury Robert Rubin, the Customs Service, and Frank Anton, a Customs Service Diplomatic Liaison Officer (collectively, "the federal defendants"). All defendants have moved for the dismissal, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), of plaintiff's claims against them. For the reasons set forth below, each of plaintiff's claims is dismissed, with the exception of her claim against the Customs Service for violation of its own regulations regarding notice and a hearing.

### FACTS

On this motion to dismiss,[1] the facts alleged in plaintiff's complaint, set forth below, are taken as true.

Plaintiff is now, and was at all relevant times, an employee of British Airways. In 1993, plaintiff was assigned to the airline's Special Services Division, which provides assistance to priority passengers. On December 13, 1993, plaintiff boarded a British Airways flight to greet a Bahrainian prince and his assistant. Plaintiff led those two passengers to the British Airways terminal, where she was approached by defendant Anton who, using "physical intimidation, verbal threats to pull plaintiff's hologram, and harassment," demanded the passports of the prince and his assistant. In response to Anton's conduct, plaintiff reported his "harassing behavior" to three of his supervisors.

As a result of plaintiff's purported refusal to surrender the passports of the prince and his assistant, her hologram, which served as an identification card, was taken from her, and her access to Customs security areas was revoked by the Customs Service for an eight-day period, from January 12 to January 20, 1994. In so penalizing plaintiff, the Customs Service asserted that she had received a verbal warning as early as October 2, 1992, when she impeded the processing of another passenger. After plaintiff's access to the Customs security areas was revoked, British Airways suspended her without pay.[2]

In mid-January 1994, a penalty action for liquidated damages in the amount of $1,000 was filed by the Customs Service against British Airways on the ground that plaintiff had violated federal regulations. Agreeing that plaintiff had violated regulations, British Airways subsequently paid the $1,000 penalty. However, in an attempt to mitigate the penalty, defendant Smith, who is the manager of passenger services at British Airways, advised the Customs Service that he had spoken with plaintiff and that plaintiff had expressed remorse and assured him that there would be no further conflicts. Plaintiff alleges that she expressed to Smith neither remorse nor a willingness to forego future incidents and that she instead maintained to Smith her innocence of the charges raised by the Customs Service.

In March 1994, British Airways held a hearing on the issue of plaintiff's conduct. As a result of what plaintiff describes as the "false testimony given by defendant Anton and defendant Smith" at that hearing, British Airways determined that plaintiff should reimburse the company for the $1,000 penalty it had paid to the Customs Service. British Airways also suspended plaintiff without pay for two days and removed her from the Special Services Division. Plaintiff has not worked in Special Services since her removal at that time.

In April 1994, plaintiff wrote a letter to the area director of the Customs Service, complaining that her hologram had been withdrawn and her access to security areas revoked without written notice. She also stated in the letter that she sought a hearing "before an officer designated by the Commissioner [of the Customs Service]" to ap-

---

**1.** Plaintiff has submitted materials outside the pleadings and requests that the federal defendants' motion be treated as a motion for summary judgment. I decline that request and note that, in deciding defendants' motions, I have considered no materials outside the pleadings. *See* FED.R.CIV.P. 12(b); *Kopec v. Coughlin,* 922 F.2d 152, 154 (2d Cir.1991) ("[T]he court may exclude the additional material and decide the motion on the complaint alone.") (internal quotations omitted).

**2.** The complaint does not specify the duration of that suspension.

peal the revocation of her access to security areas and the withdrawal of her hologram. The Customs Service director responded that notice had been given to British Airways, rather than to plaintiff, as British Airways was the violator of record. He also denied her request for a hearing, explaining that no hearing was necessary because plaintiff's hologram had been returned to her and the liquidated damages claim had been paid in full. Plaintiff's later requests for a hearing were also denied.

Plaintiff asserts that British Airways punished her more severely than it punishes male employees whose holograms have been suspended or revoked by the Customs Service. She also alleges that British Airways has engaged in a pattern and practice of discrimination against women, which "included but was not limited to the sexual harassment or sexual discrimination against the following women: [naming seven women]. Said pattern and practice of discrimination also includes the dissemination within the workforce of material sexually derogatory to women...." No details are provided in support of plaintiff's general allegations of sexual harassment and discrimination, except that plaintiff attached to the complaint one joke with sexual content which was distributed via email; although the printout of the joke includes an address list, neither plaintiff nor any of the individual defendants are listed as a sender or recipient of the joke.

### ANALYSIS

#### The Bivens Claim Against Anton

Against defendant Anton, plaintiff raises, first, a claim under *Bivens v. Six Unknown*

*Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) ("*Bivens* claim"). That claim asserts that Anton "falsely accused plaintiff of taking actions in violation of ... Customs regulations in retaliation for plaintiff complaining to [Customs officials] about defendant Anton's intimidating, threatening and harassing behavior in violation of her First Amendment rights...." Anton contends that this *Bivens* claim should be dismissed because plaintiff has failed to allege the violation of a constitutional right. He argues that plaintiff's complaints about his behavior do not constitute protected speech under the First Amendment; therefore, to the extent that he retaliated against plaintiff for those complaints,[3] he did not violate her First Amendment rights.

■ Anton further argues that he is entitled to qualified immunity with respect to the *Bivens* claim because plaintiff has not alleged the violation of a clearly established constitutional right. Under the doctrine of qualified immunity, Anton is "shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). For purposes of qualified immunity, a right is "clearly established" if it is defined with reasonable clarity; if the Supreme Court or the Court of Appeals for the Second Circuit has affirmed its existence; or if a reasonable defendant

---

**3.** Anton further argues that the *Bivens* claim must be dismissed because plaintiff has failed to make any factual allegations demonstrating that he acted with the intent to retaliate against plaintiff for exercising her First Amendment rights. The ultimate question of retaliation involves a defendant's motive and intent, which are difficult to plead with specificity in a complaint. Indeed, Rule 9(b) of the Federal Rules of Civil Procedure provides that "[m]alice, intent, knowledge and other conditions of mind ... may be averred generally." While a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred.

*Gagliardi v. Village of Pawling*, 18 F.3d 188, 195 (2d Cir.1994) (citations omitted).

In this case, plaintiff has alleged that she complained to Anton's supervisors about his behavior and that shortly thereafter he began falsely accusing her of violating Customs regulations. Drawing all inferences in favor of plaintiff, and given the difficulty of pleading motive and intent with specificity in a complaint, the chronology of events provided in the amended complaint sufficiently supports the conclusion that Anton's actions were motivated by plaintiff's complaints. *See id.* at 195. Accordingly, this argument does not provide a ground for dismissing the *Bivens* claim.

would understand from existing law that his acts were unlawful. *Cook v. Sheldon,* 41 F.3d 73, 78 (2d Cir.1994) (quoting *Jeffries v. Harleston,* 21 F.3d 1238, 1248 (2d Cir.), *vacated on other grounds and remanded,* 513 U.S. 996, 115 S.Ct. 502, 130 L.Ed.2d 411 (1994)). Moreover, "the right [Anton] is alleged to have violated must have been 'clearly established' in a ... particularized, and hence ... relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In other words, the court must consider the operation of qualified immunity in the context of "the circumstances with which [Anton] was confronted." *Id.*

A threshold inquiry in analyzing an assertion of qualified immunity is whether the plaintiff has alleged a constitutional violation in the first place: "[A] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time defendant acted is ... whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Plaintiff alleges that Anton violated her First Amendment rights by falsely testifying against her in retaliation for her complaining to Anton's supervisors about his "harassing behavior" at the time that he asked her to turn over the passport of the Bahrainian prince.

In considering whether plaintiff's complaints about Anton constitute protected speech under the First Amendment, it is significant that the injury plaintiff ultimately complains of is the withdrawal, "based on ... Anton's false allegations," of her hologram and her access to security areas, for where a public authority has withdrawn a license, contract, or privileges in retaliation for the exercise of speech by the licensee or recipient, a First Amendment claim may be stated. *See. e.g., Bd. of County Comms. Wabaunsee County, Kansas v. Umbehr,* — U.S. —, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996) (independent contractor complained that contract was not renewed in retaliation for criticism of

Board); *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1058 (2d Cir.), *cert. denied,* 510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993) (towing company complained that assignment of exclusive right to towing referral had been revoked in retaliation for complaints against state); *Havekost v. United States Dep't of Navy,* 925 F.2d 316 (9th Cir.1991) (licensee complained that United States Department of Navy officer revoked license in retaliation for licensee's circulation of a petition). In such cases, the appropriate constitutional analysis is the analysis governing the speech rights of government employees. *See Umbehr,* — U.S. at —, 116 S.Ct. at 2349; *White Plains Towing,* 991 F.2d at 1057–60; *Havekost,* 925 F.2d at 318.

█ Under that analysis, plaintiff must show, "as an initial matter, that [her] speech may be fairly characterized as constituting speech on a matter of public concern." *White Plains Towing,* 991 F.2d at 1058 (internal quotations omitted); *see Umbehr,* — U.S. at —, 116 S.Ct. at 2352. That is because "[t]he determination whether a public employer has properly discharged an employee for engaging in speech requires 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987) (quoting *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968)).

█ Once plaintiff has established that her speech involves a matter of public concern, she must next establish that the speech was at least a significant or motivating factor in the adverse employment action. *White Plains Towing,* 991 F.2d at 1058. If she fails to establish either the public concern or the motivating factor element, her claim fails. *Id.* at 1059; *see Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983) ("[I]f [the implicated speech] cannot be fairly characterized as constituting speech on a matter of public concern, it is unneces-

sary for us to scrutinize the reasons for [the employee's] discharge."). Moreover, Anton is entitled to qualified immunity with respect to the *Bivens* claim unless plaintiff's statements are of "such clear public concern that it would not be reasonable for [Anton] to conclude that it was lawful to discharge or otherwise retaliate against [her]." *Piesco v. City of New York*, 933 F.2d 1149, 1161 (2d Cir.), *cert. denied*, 502 U.S. 921, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991).

In this case, the complaint alleges that plaintiff complained to Anton's superiors of his "harassing behavior" at the time that he demanded the passport of the Bahrainian prince. Reading the complaint as a whole, and drawing all inferences in favor of plaintiff, plaintiff's complaints presumably included the assertion that on that occasion, Anton threatened to revoke plaintiff's hologram, and that he "physical[ly] intimidat[ed]" and "harass[ed]" her.

Thus, plaintiff complained of a single incident of untoward behavior by a single official. Such speech does not implicate the kind of weighty, civic issues that have been characterized by the Court of Appeals for the Second Circuit as clearly involving a matter of public concern. Plaintiff did not, for example, complain to Customs Service supervisors of widespread corruption or fraudulent practices throughout the Customs Service. *See Rookard v. Health and Hosps. Corp.*, 710 F.2d 41, 46 (2d Cir.1983) ("An allegation of corrupt and wasteful practices at a large municipal hospital ... obviously involves a matter of public concern."); *Vasbinder v. Ambach*, 926 F.2d 1333 (2d Cir.1991) (involving retaliation for an employee's report to the Federal Bureau of Investigation of possible fraud and misallocation of funds by a state office). Nor did she give testimony regarding policies of the Customs Service before a governmental body. *See Piesco*, 933 F.2d 1149 (involving retaliation against an appointee to the New York City Department of Personnel for her testimony before a New York State Senate Committee on the issue of the administration of civil service tests); *Dobosz v. Walsh*, 892 F.2d 1135 (2d Cir.1989) (involving retaliation against a police officer for his cooperation with the Federal Bureau

of Investigation in a homicide investigation and his testimony in court against a fellow officer).

Instead, plaintiff simply complained of a single official's behavior on a single occasion. Even though it is conceivable that a complaint of physical intimidation and harassment by a Customs Service official might touch upon a matter of public concern, it is also entirely reasonable for Anton to have concluded that the subject of plaintiff's complaint was a personal, employment-related grievance. Accordingly, he is entitled to qualified immunity with respect to this claim. *See Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983) ("[W]hen a public employee speaks not as a citizen upon matters only of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision. ...."); *see also id.* at 149, 103 S.Ct. at 1691 ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark— and certainly every criticism directed at a public official—would plant the seed of a constitutional case."). The *Bivens* claim is therefore dismissed.

### The Section 1985(3) Claim Against Anton and Smith

Plaintiff's claim under 42 U.S.C. § 1985(3) against Anton and Smith alleges that they conspired to "punish plaintiff for exercising her First Amendment rights by complaining about defendant's harassment of her, and to deprive her of her Fifth Amendment right to a fair hearing pursuant to United States Customs regulations." The relevant portion of Section 1985(3) provides that a conspiracy to interfere with civil rights exists "[i]f two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...."

To state a cause of action under Section 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a

person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

*Traggis v. St. Barbara's Greek Orthodox Church,* 851 F.2d 584, 586–87 (2d Cir.1988). Plaintiff must also allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 829, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983) (internal quotations omitted). Conspiracies motivated by discrimination against women are encompassed by Section 1985(3). *See N.Y. State Nat'l Org. For Women v. Terry,* 886 F.2d 1339, 1359 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

■ Anton and Smith argue that plaintiff has failed to allege a conspiracy between them with sufficient particularity. "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983). Diffuse and expansive allegations of a conspiracy are insufficient, unless they are amplified by specific instances of alleged misconduct. *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977).

■ Although plaintiff alleges that Anton and Smith conspired to present false testimony at her British Airways hearing in March 1994, the amended complaint does not allege that Anton and Smith had contact of any kind. She merely asserts that both Anton and Smith testified falsely at the hearing;

she then makes the vague and conclusory allegation that they did so "in furtherance of a conspiracy between them." Because plaintiff has alleged no facts at all from which a meeting of the minds between Anton and Smith on a course of action intended to deprive plaintiff of her constitutional rights can be inferred, her allegations are insufficient to survive a motion for dismissal. *See. e.g., San Filippo v. U.S. Trust Co. of N.Y.,* 737 F.2d 246, 256 (2d Cir.1984) (conclusory allegation that defendant had conspired with assistant district attorney insufficient to withstand "either a 12(b)(6) motion for dismissal or in the alternative a motion for summary judgment"), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985); *Berman v. Turecki,* 885 F.Supp. 528, 534 (S.D.N.Y.1995).[4]

### The Section 1985(3) Claim Against British Airways and Smith

■ Plaintiff has also raised a Section 1985(3) claim against British Airways and Smith, alleging that "British Airways by and through its manager Smith did deprive plaintiff of her First Amendment rights and her rights to equal protection and due process under the Fifth Amendment...." Because plaintiff has alleged a conspiracy to violate the First and Fifth Amendments, two Amendments which proscribe government rather than private action, plaintiff must allege government involvement in the conspiracy. *See United Brotherhood of Carpenters and Joiners of America, Local 610, AFL–CIO v, Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Jones v. Deutsch,* 715 F.Supp. 1237, 1248 (S.D.N.Y.1989). Yet neither British Airways nor Smith is a state actor.

■ Plaintiff now asserts that the conspiracy which is framed in her amended complaint as a Section 1985(3) claim against British Airways and Smith is actually "alleged to exist between British Airways and the Unit-

4. The defendants have offered additional arguments in support of their claim that the Section 1985(3) claim against Anton and Smith should be dismissed, including that plaintiff has failed to allege with sufficient particularity the requisite discriminatory intent on the part of Anton and Smith. Indeed, plaintiff has alleged *no* facts supporting her conclusory allegation that either Anton or Smith was motivated by discriminatory animus. Conclusory allegations of discriminatory intent alone are insufficient to survive a motion to dismiss a Section 1985(3) claim. *See. e.g., Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1088 (2d Cir.1993). Thus, the Section 1985(3) claim against Anton and Smith is dismissible on this ground as well.

ed States Customs Service." The amended complaint on its face, however, alleges that "British Airways by and through its manager Allan Smith did deprive plaintiff of her First Amendment rights and her rights ... under the Fifth Amendment in violation of 42 U.S.C. § 1985(3)." It does *not* state a Section 1985(3) claim against British Airways and the Customs Service.

Moreover, the complaint does not allege any action in concert by British Airways and the Customs Service. It merely alleges that each organization reacted to measures taken by the other organization. For instance, it alleges that, after the Customs Service instituted a $1,000 penalty action against British Airways, British Airways agreed to pay the penalty and then held a hearing to determine whether plaintiff was liable for reimbursement. Plaintiff relies on these facts to establish that British Airways and the Customs Service acted jointly to deprive her of her constitutional rights. Yet the facts alleged in plaintiff's complaint simply do not support the conclusions that she espouses. Accordingly, the Section 1985(3) claim, alleging as it does a conspiracy between two private parties, is dismissed.

### The NYSHRL Claims

Plaintiff also asserts claims under the New York State Human Rights Law, N.Y. Exec. Laws §§ 296 *et seq.* ("NYSHRL"), against Anton, Smith, and British Airways, alleging that they discriminated against her because she is a woman. Yet each of the federal claims involving those three defendants has been dismissed, for the reasons set forth above. "Certainly, if ... federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Accordingly, I decline to exercise supplemental jurisdiction over the NYSHRL claims raised by plaintiff; and they are also dismissed.

### Fifth Amendment Claim Against the Customs Service

█ Finally, plaintiff alleges that the Customs Service deprived her of "notice, hearing, an opportunity to be heard, and due process and equal protection of the law in violation of the Fifth Amendment ..." She seeks either a declaration that she did not violate Customs regulations or an order directing the Customs Service to provide her with notice and a hearing.

Customs regulations expressly provide for notice and a hearing upon the revocation or suspension of access to Customs security areas. Specifically, 19 C.F.R. § 122.187(b) provides that "[t]he port director shall suspend or revoke access to the Customs security area by giving notice of the proposed action in writing to the employee, with a copy of the notice to the employer." Additionally, under 19 C.F.R. § 122.187(d), "[i]f a hearing is requested [by the employee whose access is revoked or suspended], it shall be held before a hearing officer designated by the Commissioner ... within thirty days following the request."

█ Whether or not plaintiff can make out a Constitutional claim, the allegations in this case are sufficient to state a claim under the *Accardi* doctrine, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). *See Montilla v. INS*, 926 F.2d 162, 166–170 (2d Cir.1991). The Court of Appeals for the Second Circuit has recognized the continuing vitality of the *Accardi* doctrine, which it has described as a "judicially-evolved rule ensuring fairness in administrative proceedings" under which, in certain circumstances, "the rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling on the agency." *Montilla*, 926 F.2d at 168, 166. The doctrine is particularly applicable where, as here, the agency regulation that was departed from governs "the rights or interests of the objecting party." *Id.* at 167. The doctrine "is premised on fundamental notions of fair play underlying the concept of due process," and it provides an avenue for the exercise of judicial restraint by avoiding a decision of the case on Constitutional grounds. *Id.* at 167–68.

Defendant offers two arguments against applying the *Accardi* doctrine in this case. First, it contends that, because it provided British Airways with notice and an opportunity for a hearing, it need not provide the

same to plaintiff. Yet Section 122.187 expressly sets forth the rights of an employee, independent of his or her employer, to notice and a hearing. The regulation thus implicitly recognizes that in many situations, as in the case at hand, the interests and incentives of the employee may diverge from those of the employer. Thus, that British Airways received notice and an opportunity for a hearing did not vitiate defendant's obligations to plaintiff.

■ Defendant also relies on 19 C.F.R. § 122.182(a), which provides that "[t]he identification card, strip or seal [of persons with access to Customs security areas] remains the property of Customs, and any bearer must immediately surrender it upon demand by any authorized Customs officer." However, that language does not nullify 19 C.F.R. § 122.187, which elaborately sets forth the rights of persons deprived of their security access to notice in writing, an appeal of the revocation or suspension of their security access, and a hearing in compliance with the detailed specifications of Section 122.187(d). Accordingly, defendants' argument is unavailing. And, as Section 122.187 is clearly a regulation which significantly affects plaintiff's rights and interests, the *Accardi* doctrine applies. This claim against the Customs Service will therefore not be dismissed.

## CONCLUSION

Each of the claims in plaintiff's amended complaint is dismissed, with the exception of her claim against the Customs Service for violation of its own regulations.

As to the dismissed claims, plaintiff is granted leave to replead within thirty days.

**SO ORDERED.**