George M. WEEKS, III,
Plaintiff–Appellant,

v.

Robert BAYER, individually and in his capacity as Director, Nevada Department of Prisons, Defendant–Appellee.

No. 00–15269.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 14, 2001

Filed April 18, 2001

Peter C. Wetherall, Law Offices of Peter C. Wetherall, Reno, Nevada, for plaintiff-appellant George M. Weeks III.

Julie Slabaugh, Deputy Attorney General, Litigation Division, Office of the Attorney General, Carson City, Nevada, for defendant-appellee Robert Bayer.

Before: NOONAN, McKEOWN and WARDLAW, Circuit Judges.

McKEOWN, Circuit Judge:

In its capacity as a public employer, the state bears special constitutional burdens. Notably, the First Amendment restricts the state's ability to fire employees who speak out on matters of public concern. But this doctrine is limited; after all, "the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Connick v. Myers*, 461 U.S. 138, 149, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Here, we must determine whether Mr. Weeks's single comment regarding the funding status of a government program, made in private and without further indicia of public concern-such as allegations of mismanagement or fraud, for instance, or an attempt to report the matter publicly-carries protected status. We conclude that it does not. We therefore affirm the district court's grant of judgment on the pleadings.

## BACKGROUND

Beginning in July 1988, Plaintiff–Appellant George Weeks worked as an Assistant Director in the Nevada Department of Prisons (the "Department").[1] He received "outstanding" performance evaluations from his various supervisors over the years, including Defendant–Appellee Robert Bayer.

In late October 1997, Weeks received an inquiry from a representative of the Bureau of Alcohol and Drug Abuse ("BADA"), another Nevada state agency,

---

1. Because this case was dismissed on the pleadings, these facts are culled from Weeks's Complaint and are presumed to be true for purposes of this appeal. *Arrington v. Wong*, 237 F.3d 1066, 1068 n. 1 (9th Cir.2001).

regarding the status of the Department's inmate substance abuse and rehabilitation programs. According to the complaint, Weeks responded that the programs were "at risk of discontinuation due to defendant Bayer's delays in insuring and allotting funding for the programs." Weeks claims that his comments were meant "only to convey information relative to the status of certain prison programs" and, further, that they "were made out of a sense of obligation to keep BADA appraised as to the status of programs for which BADA was seeking financial contribution from the Nevada Department of Prisons."

One week later, Bayer fired Weeks. Weeks then filed suit, contending that the termination violated his First Amendment right to free speech. In his answer, Bayer denied the claims and then, in July 1998, moved for judgment on the pleadings. Weeks responded that his complaint was sufficient and made no attempt to amend it. In February 1999, the district court granted Bayer's motion for judgment on the pleadings, concluding that Weeks's speech did not relate to a matter of public concern. Only then did Weeks seek to amend his complaint. At the same time, he moved to reopen the judgment. The district court denied both motions, and this appeal followed.

■ We review de novo the district court's dismissal under Federal Rule of Civil Procedure 12(c), *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 528 (9th Cir.1997), and the district court's First Amendment public concern analysis, *Roe v. City of San Francisco*, 109 F.3d 578, 584 (9th Cir.1997). We review for abuse of discretion the district court's denial of Weeks's motion to reopen the judgment. *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 464 (9th Cir.1989). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## ANALYSIS

### I. FIRST AMENDMENT CLAIM

■ To state a claim for unlawful retaliation in violation of the First Amendment, an employee must first demonstrate that the speech was "on a matter of public concern." *Connick*, 461 U.S. at 145, 103 S.Ct. 1684. Unless the speech meets this threshold requirement, we need not balance the employee's speech interest against the employer's interest in efficiency, *see Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), nor need we evaluate the causal relationship between the speech and the adverse employment action, *see Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

■ Analysis of public concern is not an exact science. Fortunately, we have avoided rigid multi-part tests that would shoehorn communication into ill-fitting categories. Rather, guided by the Supreme Court, we have focused on two general aspects of speech that indicate whether a statement relates to a matter of public concern. First and foremost, we consider the content of the speech. *See Havekost v. United States Dep't of the Navy*, 925 F.2d 316, 318 (9th Cir.1991). When the employee addresses " 'issues about which information is needed or appropriate to enable the members of society' to make informed decisions about the operation of their government," that speech falls squarely within the boundaries of public concern. *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983) (quoting *Thornhill v. Alabama*, 310 U.S. 88, 102, 60 S.Ct. 736, 84 L.Ed. 1093 (1940)). Put slightly differently, "matter[s] of political, social, or other concern to the community" are protected. *Gillette v. Delmore*, 886 F.2d 1194, 1197 (9th Cir.1989). So, for example, we have held that "misuse of public funds, wasteful-

ness, and inefficiency in managing and operating government entities are matters of inherent public concern." *Johnson v. Multnomah County,* 48 F.3d 420, 425 (9th Cir.1995). By contrast, this doctrine does not safeguard "purely private interest[s]," *Havekost,* 925 F.2d at 318, "individual personnel disputes," *McKinley,* 705 F.2d at 1114, or "the minutiae of workplace grievances," *Havekost,* 925 F.2d at 319.

■ In addition to examining the content of the speech, we also consider its "form[ ] and context." *Connick,* 461 U.S. at 147, 103 S.Ct. 1684. Thus, we look to such factors as the public or private nature of the speech, *id.* at 148, 103 S.Ct. 1684, and the speaker's motive, *Havekost,* 925 F.2d at 318. Although these factors must not be used as litmus tests, *Berg v. Hunter,* 854 F.2d 238, 242–43 (7th Cir.1988)-after all, even a private complaint may relate to a matter of public concern, *Givhan v. W. Line Consol. Sch. Dist.,* 439 U.S. 410, 414–16, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979)—they help to identify speech that is of public concern, particularly in close cases, *Johnson,* 48 F.3d at 425. Public speech is more likely to serve the public values of the First Amendment. *See* Alexander Meiklejohn, *The First Amendment Is an Absolute,* 1961 Sup.Ct. Rev. 245, 255 ("Self-government can exist only insofar as the voters acquire the intelligence, integrity, sensitivity, and generous devotion to the general welfare that, in theory, casting a ballot is assumed to express."). Private speech motivated by an office grievance is less likely to convey the information that is a prerequisite for an informed electorate. *See Connick,* 461 U.S. at 148, 103 S.Ct. 1684.

Thus, taken together, these considerations serve to identify speech that is critical to the functioning of the democratic process. Public employees "are positioned uniquely to contribute to the debate on matters of public concern" and, as such, they should be encouraged "to speak out about what they think and know without fear of retribution, so that citizens may be informed about the instruments of self-governance." *Gilbrook v. City of Westminster,* 177 F.3d 839, 870 (9th Cir.), *cert. denied,* 528 U.S. 1061, 120 S.Ct. 614, 145 L.Ed.2d 509 (1999). These matters of "public concern" are at the heart of the First Amendment, for it is only when they are brought to light that we may achieve "uninhibited, robust, and wide-open" debate about the shape and function of the government. *New York Times v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *accord Mills v. Alabama,* 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966).

■ The speech at issue here does not rise to such constitutionally-protected status. Weeks did nothing more than, on a single occasion, inform the Department representative about the funding status of the prison substance abuse and inmate rehabilitation programs. The representative did not seek, and Weeks did not convey, information about the wasteful misuse of public funds, *cf. Roth v. Veteran's Admin.,* 856 F.2d 1401, 1405–06 (9th Cir. 1988), nor did the reference concern "the inept ... administration of a governmental entity," *Hyland v. Wonder,* 972 F.2d 1129, 1139 (9th Cir.1992), or a "breach of public trust," *Connick,* 461 U.S. at 148, 103 S.Ct. 1684, any of which might well have been protected speech. There was no suggestion of malfeasance, no hint of complaint or outcry, no discussion of issues of the day. This was mere everyday conversation between government employees. To protect this single comment would go a long way toward rendering actionable every job-related conversation between government employees. Water cooler conversation would become the stuff of First Amendment claims, and casual remarks about

work would be elevated to constitutional complaints. The First Amendment does not go that far. *See Waters v. Churchill,* 511 U.S. 661, 672, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (O'Connor, J., plurality op.) (discussing a government employer's ability to limit employee speech).

Nor is Weeks's case bolstered by the form or context of his speech. *See Roth,* 856 F.2d at 1405 (noting that, specifically when the content of speech relates to "public monies," courts should look at the speech's context). Nothing in the manner of the speech suggests that it related to public concern. Weeks did not speak publicly, suggesting a desire to bring wrongdoing to light, *cf. McKinley,* 705 F.2d at 1115; he did not speak to a supervisor, urging reform of a wayward policy in a manner that might suggest public-mindedness. Indeed, Weeks did not even initiate the conversation. This was, we must reiterate, but a single private conversation about the funding status of a program. Such interoffice communications-particularly when they do not relate to matters of inherent public concern-are less likely to garner heightened constitutional protection. *Roe,* 109 F.3d at 585.

■ It is important to emphasize the narrowness of our holding. Discussions about the funding and finances of public programs are sometimes matters of public concern. *See, e.g., Hyland,* 972 F.2d at 1139; *Roth,* 856 F.2d at 1405–06. And private conversations are sometimes protected. *Givhan,* 439 U.S. at 414–16, 99 S.Ct. 693. But a simple update on the funding status of a program, without more, does not a constitutional case make.

## II. Motions To Amend And To Reopen The Judgment

■ Following dismissal of his complaint and entry of judgment against him, Weeks sought to reopen the judgment in order to amend his complaint. It is clear in the first instance that the judgment would have to be reopened, under Federal Rule of Civil Procedure 59(e), before the district court could entertain Weeks's motion to amend. *Lindauer v. Rogers,* 91 F.3d 1355, 1357 (9th Cir.1996). This requirement is a high hurdle for Weeks to meet. Judgment is not properly reopened "absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir.1999).

■ Weeks contends that the district court erred when it denied leave to amend the complaint. In support of this argument, he notes the policy interests that require courts to liberally grant leave to amend. *Cf.* Fed.R.Civ.P. 15(a). But that rationale is inapposite here. The issue is not leave to amend, as Weeks did not seek to amend his complaint prior to the entry of judgment. The question is whether the court, when it dismissed the case, committed some clear error that required it to reopen that judgment. For all of the reasons stated above, the district court did not clearly err. Faced with a complaint that did not state a cause of action, the district court properly granted judgment on the pleadings. Weeks only sought to amend after he lost and final judgment was entered. Even then, he offered no new evidence, nor did he claim any intervening change in the law. To permit Weeks to amend his complaint post-judgment-particularly in light of the fact that he did not seek to amend during the seven months that the motion for judgment on the pleadings was pending-would simply grant him the forbidden "second bite at the apple." *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir.1998). This is not the purpose of Rule 59. *389 Orange St.*

*Partners,* 179 F.3d at 665. The district court was well within its discretion to deny the motion to reopen and the appended motion to amend.

### CONCLUSION

The First Amendment requires us to safeguard "[t]he public interest in having free and unhindered debate on matters of public importance." *Pickering,* 391 U.S. at 573, 88 S.Ct. 1731. But even this lofty purpose must have its limits, as the Supreme Court has made clear. Not "all matters which transpire within a government office are of public concern," and not "every remark ... plant[s] the seed of a constitutional case." *Connick,* 461 U.S. at 149, 103 S.Ct. 1684. Weeks's remark did not relate to a matter of public concern and, hence, sows no constitutional seed.

**AFFIRMED.**