Jan JOHNSON, Plaintiff–Appellant,

v.

MULTNOMAH COUNTY, OREGON, a political subdivision of State of Oregon; William McKinley; Paul Yarborough, Defendants–Appellees.

No. 93–35353.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 13, 1994.

Decided Feb. 16, 1995.

Thad M. Guyer, Medford, OR, for plaintiff-appellant.

Steven J. Nemirow, Deputy County Counsel, Portland, OR, for defendants-appellees.

Before NORRIS, THOMPSON, and ALDISERT,[*] Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Jan Johnson appeals an adverse summary judgment on her claim for violation of her First Amendment right to free speech. Johnson claims that she was fired from her county job because of statements she made about her supervisor, statements she claims were protected by the First Amendment. The district court ruled that her speech was not protected, entered summary judgment against her § 1983 claim and dismissed her pendent state law claims without prejudice. We review the summary judgement de novo. *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994).

I

Johnson was employed by Multnomah County as an administrative assistant in the Department of Environmental Services.[1] Her job was to assist the manager of the county Expo Center and assist in the planning and supervision of the annual county fair. When her immediate supervisor left his position, Johnson applied for his job, but was not chosen to succeed him. Johnson believed herself to be better qualified than William McKinley, the man the County hired. Soon after McKinley was hired, Johnson began making statements to coworkers and others accusing McKinley of mismanagement and possible criminal conduct.[2] According to the

---

[*] Honorable Ruggero J. Aldisert, United States Circuit Judge, Third Circuit, sitting by designation.

1. Johnson does not dispute the magistrate's findings of uncontroverted facts. E.R. 225–28. The district court summarily adopted the findings and recommendations of the magistrate assigned to the case. E.R. 235.

2. The record also shows that Johnson made critical remarks about McKinley that did not amount to such serious charges. However, the record indicates that Johnson was fired not solely for these lesser criticisms, but that the main concern was about the accusations of mismanagement and potential criminal conduct. *See* E.R. 46, 49–52. If a court finds that a protected statement was a substantial or motivating factor in the dismissal, the burden shifts to the employer to show that it would have fired the plaintiff in the absence of the protected statements. *Allen v. Scribner*, 812 F.2d 426, 433 (9th Cir.1987). Since the County has not attempted such a show-

uncontroverted facts, Johnson made the following statements about McKinley:

1. He was part of a "good old boy network" and got his position as a result of undue influence.

2. He was awarding county contracts as paybacks for favors made by the "good old boy network."

3. He was involved in "restraint of trade" with a fair vendor.

4. He was allowing his friends to use the Expo for free.

5. He was not turning over to the County the proceeds from t-shirt sales at a Latoya Jackson concert at the Expo.

After McKinley became aware of these comments, Johnson was eventually fired.

## II

■ In order to prevail in her First Amendment claim, Johnson must initially prove that her statements were constitutionally protected. *Gillette v. Delmore,* 886 F.2d 1194, 1197 (9th Cir.1989). Johnson's speech cannot be protected unless it "substantially involved matters of public concern." *McKinley v. City of Eloy,* 705 F.2d 1110, 1114 (9th Cir.1983); *accord Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). If she is able to show that the statements were of public concern, then the burden shifts to the County to show that its legitimate administrative interests outweigh the First Amendment interest in Johnson's freedom of speech. *See Pickering v. Bd. of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); *Hyland v. Wonder,* 972 F.2d 1129, 1139 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2337, 124 L.Ed.2d 248 (1993). In this case, the district court did not reach the *Pickering* balancing test, but instead granted the County summary judgment after holding that none of

Johnson's statements involved a matter of public concern.

■ Speech involves a matter of public concern when it can fairly be considered to relate to "any matter of political, social, or other concern to the community." *Connick,* 461 U.S. at 146, 103 S.Ct. at 1690. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147–48, 103 S.Ct. at 1690.

The County argues that Johnson's statements were not upon matters of public concern because they were false and made with a reckless disregard for the truth.[3] The County argues that recklessly false statements, like statements about matters of no public interest, are per se unprotected by the First Amendment and that the Government need show no injury to its interests before it may fire an employee for making such statements.

In support of its position, the County relies solely upon *Pickering v. Bd. of Education,* 391 U.S. at 563, 88 S.Ct. at 1731. In *Pickering,* a school board urged the Supreme Court to hold that a teacher's statements were not constitutionally protected unless he spoke "factually and accurately, commensurate with his education and experience." 391 U.S. at 568–69, 88 S.Ct. at 1735. The teacher, on the other hand, urged the Court to rule that employees' statements on matters of public concern were protected unless they were made with knowledge that they were false or with a reckless disregard for the truth. *Id.* at 569, 88 S.Ct. at 1735. The Supreme Court expressly declined to "lay down a general standard against which all such statements may be judged." *Id.* Instead, the Court considered the statements' actual interference with the school board's legitimate interests in the operation of the school and weighed those interests against the impor-

---

ing, it cannot prevail at summary judgment unless the First Amendment protects none of the statements that were a substantial or motivating factor in Johnson's dismissal. Therefore, the summary judgment can only be affirmed in this case if we determine that the undisputed facts show that the First Amendment protects none of Johnson's more serious allegations.

3. The County does not contend that Johnson's statements were knowingly false. Therefore, we do not decide what, if any, protection such statements are afforded by the First Amendment.

tant counter-interest in permitting free and open discussion of issues of public concern. The Court concluded, saying

> [i]n sum, we hold that, in a case such as this, absent proof of false statements knowingly or recklessly made by him, a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment.

391 U.S. at 574, 88 S.Ct. at 1738 (footnote omitted). The County argues that this passage means that recklessly false statements are per se unprotected. However, the County's argument is refuted by a footnote attached to this very passage, in which the Court expressly declined to decide what protection was due recklessly false statements. *Id.* at n. 6.[4]

In *Donovan v. Reinbold,* 433 F.2d 738 (9th Cir.1970), our court considered a similar situation in which a public employee was alleged to have written libelous articles in the press. Following *Pickering,* we stated that such speech

> might be beyond First Amendment protection if the particular expression inhibits the efficient discharge of the employee's duties, or if the employee's position lends substantially greater credence to the expression than would be accorded to that of a member of the general public.

*Id.* at 742. Thus, we implied that the public employer must show a countervailing interest before it may terminate an employee for making statements that were recklessly false.

However, both *Pickering* and *Donovan* were decided prior to the Supreme Court's decision in *Connick.* Prior to *Connick,* determining whether speech was protected involved a single balancing test between the First Amendment interest in uninhibited speech and the public employer's interest in administrative efficiency. The *Pickering* balancing test did not attempt to first consider whether the speech was per se unprotected as a matter void of public concern. Thus, the public employer was always required to show

at least some interference with its interests before it could penalize employees for their speech. The "matter of public concern" test attempts to identify those cases in which the First Amendment protection of the speech is so insubstantial that the employer need show no countervailing interest at all before the employer may repress it. The County argues that recklessly false statements, like speech regarding the minutiae of internal personnel disputes, enjoy so little First Amendment protection that the public employer need show no injury to its legitimate interests before taking adverse actions in retaliation.

The Circuits appear to be split on whether, in light of *Connick,* recklessly false statements are per se unprotected or whether the recklessness should be considered as one of the factors in the *Pickering* balance of interests. In *Brenner v. Brown,* 36 F.3d 18, 20 (7th Cir.1994), the Seventh Circuit stated that "even if the speech ... involved a matter of public concern, an employee's speech is not protected where it is made with a reckless disregard for the truth...." In *Wulf v. City of Wichita,* 883 F.2d 842, 859 n. 24 (10th Cir.1989), the Tenth Circuit wrote, "[p]resumably, the issue of the truth or falsity of the statements at issue is relevant to both the threshold public concern analysis and the balancing required under *Pickering.* It is difficult to see how a maliciously or recklessly false statement could be viewed as addressing a matter of public concern." *See also Powell v. Gallentine,* 992 F.2d 1088, 1091 (10th Cir.1993). On the other hand, in *Brasslett v. Cota,* 761 F.2d 827, 840–41 (1st Cir.1985), the First Circuit considered the recklessness of the employee's statements as part of the *Pickering* balancing test and refused to apply a per se rule. This same approach was followed by the D.C. and Fifth Circuits in *American Postal Workers Union v. United States Postal Service,* 830 F.2d 294, 305–06 (D.C.Cir.1987), and *Moore v. City of Kilgore,* 877 F.2d 364, 376 (5th Cir.), *cert. denied,* 493 U.S. 1003, 110 S.Ct. 562, 107 L.Ed.2d 557 (1989), respectively.

---

**4.** In its brief, the County omits this footnote from its quotation of the case and fails to note its omission. Appellees' Brief at 10.

We find the latter cases more persuasive. The County is correct that "there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974). However, while false statements are not deserving, in themselves, of constitutional protection, "erroneous statement is inevitable in free debate, and ... it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need ... to survive.'" *New York Times Co. v. Sullivan,* 376 U.S. 254, 271–72, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964) (quoting *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 337, 9 L.Ed.2d 405 (1963)). For this reason, constitutional protection is afforded some false statements. In determining the level of protection to such statements, the Supreme Court has traditionally balanced the interest in creating a "breathing space" for speech against the competing governmental interests associated with preventing injurious false statements. Thus, in deciding what latitude a state has in creating causes of action for defamation, the Supreme Court has weighed the legitimate state interest in compensating victims of defamatory falsehoods against the First Amendment interest in promoting vigorous public debate. *Gertz,* 418 U.S. at 341–42, 94 S.Ct. at 3007–08.

This approach is consistent with considering recklessness as part of the *Pickering* balancing test. There is a significant First Amendment interest in encouraging public employees, who have special access to facts relevant to debates on issues of public concern, to speak freely and make that information available. *See Pickering,* 391 U.S. at 571–72, 88 S.Ct. at 1736–37. There is a real danger that stripping all First Amendment protection from recklessly false statements may inhibit the flow of accurate information from public employees who are uncertain about whether they have accumulated a legally sufficient factual basis for their statements. A more cautious approach is in order, an approach that considers the actual damage done to the government by the reckless statement, whether anyone believed the statements, whether the government could easily rebut the false statements, etc. This is precisely the analysis undertaken in the *Pickering* balancing. *See Pickering,* 391 U.S. at 570–72, 88 S.Ct. at 1735–37.

Finally, although it was decided before *Connick, Pickering* itself provides authority for declining to adopt a per se rule. In *Pickering,* the Supreme Court explicitly declined to create a general duty of care with which public employees must speak in order to qualify for any First Amendment protection. While the Court left open that recklessly false statements would be treated differently, we see no reason why they should be. In the context of defamation law, the Supreme Court has permitted liability premised on recklessly false statements only in light of the countervailing governmental interest in compensating citizens who have suffered damages from such false statements. *Gertz,* 418 U.S. at 341–42, 94 S.Ct. at 3007–08. A public employer should have to show a similar countervailing interest in order to take adverse action against an employee for making reckless statements on matters of public concern.

■ We conclude, therefore, that recklessly false statements are not per se unprotected by the First Amendment when they substantially relate to matters of public concern. Instead, the recklessness of the employee and the falseness of the statements should be considered in light of the public employer's showing of actual injury to its legitimate interests, as part of the *Pickering* balancing test.

### III

■ We return, therefore, to the question whether Johnson's statements substantially involved matters of public concern.

"[C]ontent is the greatest single factor in the *Connick* inquiry." *See Havekost v. United States Dep't of Navy,* 925 F.2d 316, 318 (9th Cir.1991) (quoting *Berg v. Hunter,* 854 F.2d 238, 243 (7th Cir.1988) (citations omitted), *cert. denied* 489 U.S. 1053, 109 S.Ct. 1314, 103 L.Ed.2d 583 (1989)). Johnson's allegations range from simple mismanage-

ment, to misuse of public resources, to potentially criminal behavior. The guarantees of the First Amendment "share a common core purpose of assuring freedom of communication on matters relating to the functioning of government." *McKinley,* 705 F.2d at 1114 (quoting *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 575, 100 S.Ct. 2814, 2826, 65 L.Ed.2d 973 (1980) (plurality opinion)). Therefore, we have stated that misuse of public funds, wastefulness, and inefficiency in managing and operating government entities are matters of inherent public concern. *Roth v. Veteran's Admin.,* 856 F.2d 1401, 1405 (9th Cir.1988). Johnson's statements were of precisely this type.

The magistrate acknowledged that the content of Johnson's statements were of public concern, but nevertheless concluded that "[t]he evidence shows that Plaintiff's speech related solely to personnel disputes and grievances and did not benefit the public, consequently, Plaintiff's speech does not warrant First Amendment protection." E.R. 233. This conclusion is based upon a misunderstanding of the case law.

In *Connick v. Myers,* the Court stated that the First Amendment "does not require a grant of immunity for *employee grievances* not afforded by the First Amendment to those who do not work for the State." 461 U.S. at 147, 103 S.Ct. at 1690 (emphasis added). However, Johnson's allegations did not constitute an "employee grievance" within the meaning of *Connick.* Although Johnson was embittered about not having been promoted, her allegations did not concern the "minutiae of workplace grievances," *Havekost,* 925 F.2d at 319, but rather concerned information that is of inherent "relevance to the public's evaluation of the performance of government agencies." *McKinley,* 705 F.2d at 1114. This case is not like *Connick,* which involved an employment dispute related to internal administrative procedures within a prosecutor's office. 461 U.S. at 140–41, 103 S.Ct. at 1686–87. Rather, it is similar to *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 412–13, 99 S.Ct. 693, 694–95, 58 L.Ed.2d 619 (1979), in which a teacher had been fired after complaining to her school's principal about school policies and practices which she perceived as racially discriminatory. That the statements were made by an employee about the operation of the government entity does not convert her speech into an unprotected "employee grievance."

Nonetheless, the County argues that other aspects of the context of Johnson's statements support the district court's conclusion that Johnson's statements were not of public concern. The County argues that we should take into account that Johnson was motivated by a private grudge against her boss and did not speak to protect the public or bring wrongdoing to light. The County is correct that the employee's motivation and the chosen audience are among the many factors to be considered in light of the public's interest in the subject matter of the speech. *See Havekost,* 925 F.2d 316, 318 (9th Cir.1991) (stating that while the intended audience and purpose for speaking are relevant, "motive should not be used as a litmus test for public concern"); *Hyland v. Wonder,* 972 F.2d at 1139 (stating that speech need not be directed to general public to be of public concern). In a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern.

However, application of these principles in this case leads us to conclude that the County was not entitled to summary judgment based on a holding that Johnson's statements were not of public concern. Many of the relevant facts are in dispute. The County argues that Johnson spoke maliciously, with the intention of undermining of supervisor whose job she wanted. Johnson, on the other hand, presents evidence to show that she was motivated by a genuine interest in the welfare of the Expo and a righteous indignation of McKinley's inadequate job performance. E.R. at 200–201. Given the inherent public interest in the subject matter of Johnson's allegations and the state of the record, we hold that the district court erred in granting summary judgment to the County on the

ground that Johnson's statements were not of public concern.

## IV

Even if Johnson spoke on matters of public concern, the County may yet be entitled to summary judgment "if the defendants show that [the] speech so severely damaged office harmony and working relationships that the government's interest in promoting an effective workplace outweighs [the employee's] First Amendment rights." *Hyland v. Wonder*, 972 F.2d at 1139. The employer bears the burden of proving that the balance of interests weighs in its favor. *Id.* "The more tightly the First Amendment embraces the speech the more vigorous a showing of disruption must be made." *Id.*

The County argues strenuously that its interests outweigh Johnson's because her statements were recklessly false and such statements receive very little protection from the First Amendment. While there is a First Amendment interest in protecting recklessly false statements out of a concern for creating a "breathing space" for robust public debate, that interest is certainly very limited.[5] *See Arnett v. Kennedy*, 416 U.S. 134, 162–63, 94 S.Ct. 1633, 1648–49, 40 L.Ed.2d 15 (1974) (stating that the Court had no difficulty in concluding that the *Pickering* balancing test weighed in favor of the government in a case in which an employee made recklessly false allegations of bribe-taking by his superiors). However, there is a genuine issue of material fact in this case as to whether Johnson's allegations were recklessly false.

In her deposition, Johnson stated that her belief that McKinley got his job through the "good old boy" network was founded upon the fact that McKinley was friends with Paul Ail, a concessionaire who held sway over one of the members of the County's hiring committee. E.R. at 70–73. That influence was due, Johnson testified, to Ail's personal relationship with the hiring committee member and because that member was an employee of a County Commissioner to whom Ail made campaign contributions. *Id.* The County

argues that these facts are not evidence of actual influence and in her deposition Johnson agreed that she had no "evidence" of actual influence. E.R. at 72, 76. However, whether or not Johnson would characterize the basis of her inference of influence as "evidence" or a "feeling" is immaterial. The record shows a dispute over whether influence was in fact exerted and Johnson has shown that her allegations were not baseless.

Furthermore, contrary to the County's assertions, Johnson did set forth the basis of her allegations that McKinley was awarding contracts to other "good old boys." Johnson presented evidence that some of the contractors had preexisting relationships with McKinley before he took the job and were then awarded contracts. This included Paul Ail who had connections to the hiring committee that chose McKinley for his job, and Glen Boss, who knew McKinley and Paul Ail. E.R. at 174. She testified that even though concession contracts at the Expo were supposed to be competitive, Boss kept receiving the contract. She attributed this to the fact that the Expo chose not to own the concession equipment, which meant that any new concessionaire would have to bear the cost of installing new equipment while incumbent Boss did not. E.R. at 175. Finally, Johnson testified that Paul Ail's son, Ron, had been given a contract which appeared unnecessarily lucrative. E.R. at 176.

Although Johnson testified that she did not know the legal basis of her claim that McKinley was restraining trade by placing certain restrictions on what vendors could sell, it does not appear that Johnson was attempting to make a legal claim, but rather was stating that the practice was unfair. *See* E.R. 104–105. Furthermore, Johnson testified as to the factual basis of her claim. She testified that McKinley was limiting the types of products some vendors could sell in order to reduce competition with the Expo's concessionaires because the Expo got a commission on items sold by concessionaires. *Id.*

---

5. The First Amendment interest in protecting merely inaccurate statements made in good faith, however, is a good deal stronger. *See Pickering*,

391 U.S. at 571–73, 88 S.Ct. at 1736–37; *New York Times Co. v. Sullivan*, 376 U.S. at 271–72, 84 S.Ct. at 721–22.

Finally, the County does not controvert that McKinley was allowing people to use the Expo for free, but rather argues that this was authorized and proper. E.R. at 21:12. Furthermore, it does not dispute that no money was turned in from t-shirt sales at the Jackson concert. Instead, it claims that no t-shirts were sold. E.R. at 27:10. However, Johnson testified that she saw t-shirts being sold at the concert. *See* E.R. at 179.

On the state of the record, therefore, we cannot find as a matter of law that Johnson's allegations were false or reckless. Therefore, for purposes of summary judgment, we must presume that her statements were true and made in good faith.

■ The County next argues that even if Johnson's statements were of public concern and Johnson possessed proof of wrongdoing, her speech interest would still be outweighed by the County's interest in avoiding disruption in the workplace. The County's showing of disruption consists in evidence that Johnson's statements interfered with the close working relationship between herself and McKinley and undermined McKinley's relationship with co-workers, subordinates and private vendors. But the County must do more than show mere disruption. Instead, it must show actual injury to its *legitimate* interests. As the Third Circuit has recognized:

> [t]he First Amendment balancing test [of *Pickering*] can hardly be controlled by a finding that disruption did occur. An employee who accurately exposes rampant corruption in her office no doubt may disrupt and demoralize much of the office. But it would be absurd to hold that the First Amendment generally authorizes corrupt officials to punish subordinates who blow the whistle simply because the speech somewhat disrupted the office.

*O'Donnell v. Yanchulis*, 875 F.2d 1059, 1062 (3d Cir.1989) (citations omitted) (emphasis omitted). In other words, the County does not have a legitimate interest in covering up mismanagement or corruption and cannot justify retaliation against whistleblowers as a legitimate means of avoiding the disruption that necessarily accompanies such exposure. Nor are the County's legitimate interests injured if McKinley was undermined by truthful statements exposing his own wrongdoing. If we were to hold otherwise, "[s]ome of the most important public employee speech—exposing government corruption, wrongdoing, or incompetence—would be left outside the First Amendment's aegis." *Hyland v. Wonder*, 972 F.2d at 1138. Because we presume for the purposes of summary judgment that Johnson's allegations were true, we hold that the County's showing of disruption is insufficient to entitle it to summary judgment on the ground that its legitimate administrative interests outweigh the First Amendment interest in Johnson's freedom of speech.

Therefore, the summary judgment in favor of the County is VACATED and the case is REMANDED for proceedings consistent with this opinion.