**Kimberly RENDISH, Plaintiff–Appellant,**

v.

**CITY OF TACOMA; Ray C. Corpuz, City Manager for the City of Tacoma, in his Individual Capacity; Robin Jenkinson, City Attorney for the City of Tacoma, in her Individual Capacity; John Kouklis, Chief Assistant City Attorney for the City of Tacoma, in his Individual Capacity; John Does 1–10, in their Individual Capacities; Jane Does 1–10, in their Individual Capacities, Defendants–Appellees.**

No. 96–36150.

United States Court of Appeals,
Ninth Circuit.

Jan. 26, 1998.

Before: LAY,* BEEZER, and TROTT, Circuit Judges.

Order; Dissent by Judge REINHARDT.

The panel as constituted in the above case has voted to deny the petition for rehearing and to reject the suggestion for a rehearing en banc.

The full court was advised of the suggestion for rehearing en banc. An active judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R.App. P. 35.

The petition for rehearing is DENIED and the suggestion for a rehearing en banc is REJECTED.[1]

REINHARDT, Circuit Judge, with whom Judge TASHIMA joins, dissenting from the failure to rehear en banc:

I respectfully dissent from the court's failure to rehear this case en banc.

The panel's holding that a public employee (an assistant city attorney) may be fired from her job for filing a good faith lawsuit against her employer—a lawsuit that concededly raises important issues of public concern—mocks the very purpose of the First Amendment's Petition Clause and debases our commitment to the legal system. It will certainly come as a surprise to those who have taken seriously our assertions that persons with legitimate grievances should settle their disputes by peaceful means in the courts rather than through disruptive or militant extra-legal actions. The message we send to public employees and others today is quite the opposite: if you avail yourself of the judicial process, you face termination from your employment and possibly other equally painful consequences; accordingly, you had best seek your remedies elsewhere.

Disregarding basic tenets of liberty and security, the panel holds that the filing of a legitimate lawsuit to protect one's job rights and to expose governmental corruption and discrimination is grounds for discharge, no matter how meritorious the suit.[1] In doing so, it also ignores direct circuit precedent to the contrary and creates an entirely unjustified aberration in this court's First Amendment jurisprudence. There is no excuse for allowing this opinion to remain on the books, not even the absence of over a third of our authorized number of judges.

Kimberly Rendish was an Assistant City Attorney for the City of Tacoma. She alleges, and the panel accepted as true, that in the course of her employment, a municipal court judge, "Judge Turco[,] demanded that she be fired or disbarred because she had spoken

---

* The Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

1. The motion to supplement the Excerpt of Record is denied.

1. I should note at the outset that the public employee involved is not a "policymaker" and thus is not subject to the "policymaker" excep-

tion, *see, e.g., Fazio v. City and County of San Francisco,* 125 F.3d 1328 (9th Cir.1997), which allows public employers to require top level employees to adhere to departmental policy positions and to refrain from public criticism of departmental policies. For obvious reasons, that rule does not apply to lower-level employees, such as the plaintiff in this case.

with a reporter about allegedly inappropriate remarks by Judge Turco"; that she made known her opposition to the City's discriminatory hiring practices; and that she spoke out about the "improper disposition of criminal cases for friends and city employees." *Rendish v. City of Tacoma*, 123 F.3d 1216, 1224 (9th Cir.1997). In response to her lawful and proper actions, "City officials denied her a pay raise, suspended her, subjected her to disparate discipline and scrutiny, and denied her a promotion." *Id.* at 1218. Rendish eventually brought a lawsuit in state court against the City, claiming that the City took these actions in retaliation for her speaking out about the City's improper and unlawful practices "and that the City therefore violated her freedom of speech." *Id.* Eight days after Rendish filed her action, the City escalated its assault on her constitutional rights, and fired her for having the audacity to sue the sovereign. She then brought this § 1983 lawsuit in federal court, alleging that the City's retaliatory discharge violated her First Amendment right to access to the courts.

The panel in no way questions the legitimacy of the claims asserted in Rendish's lawsuits and presumes that the City fired her because of her decision to seek relief in the courts. *Id.* at 1219 n. 1. It nevertheless upholds the district court's denial of her request for a preliminary injunction on the ground that because "Rendish's charges [of unlawful discrimination, corruption, and retaliation] go to the core of her employer's mission"—i.e., "to uphold and enforce the law"—the City's interest in avoiding "disruption and conflict" in its workplace outweighs Rendish's interest in pursuing the litigation. *Id.* at 1225. The thrust of the panel's decision is clear: the City is free to fire Rendish for filing a meritorious lawsuit designed to vindicate her efforts to expose discrimination and corruption, because the exposure of such

unlawful conduct would interfere with the City's regular or routine method of operations.[2]

The panel's conclusion is not only wholly inconsistent with the First Amendment, but it is contrary to the basic policies that underlie our legal system. Rendish's charges of corruption in the handling of criminal cases and of employment discrimination are extremely serious and of great public concern. Whatever may ultimately prove to be the case regarding their validity, for present purposes I, like the panel, must assume that the facts are as stated by Rendish. Given these facts, Rendish is surely entitled to file a lawsuit seeking relief from unlawful retaliation for exposing improper and wrongful governmental action, and may not be discharged for doing so. Punishment by the government of public employees for their use of the courts to vindicate their rights regarding matters of public concern should strike any judge as clearly impermissible and unconstitutional governmental action. Moreover, contrary to the panel's view, the seriousness of Rendish's allegations *underscores*, rather than diminishes, the need for constitutional protection from a retaliatory discharge for an entirely proper and appropriate use of the legal system.[3]

The panel reaches its perverse conclusion only as a result of committing two fundamental errors: (1) it applies a balancing test to Rendish's retaliatory discharge claim in a manner that directly contravenes recent Ninth Circuit and Supreme Court precedent; and (2) it erroneously equates a discharge based on a petition for redress of grievances—the filing of a good faith lawsuit of public concern—with a discharge based on an employee's conduct regarding purely private matters in or about the workplace.

---

**2.** Technically, the panel concluded Rendish was not entitled to a preliminary injunction ordering reinstatement. This determination, however, explicitly rested on the panel's decision that Rendish had not demonstrated a probability of success on the merits. The panel also determined secondarily that Rendish had not demonstrated irreparable injury, but did so primarily because it determined that she was not likely to succeed on the merits. *See* 123 F.3d at 1225–26.

**3.** There is no contention that Rendish should have pursued her claims in any other forum. Under the panel's view of the law, it appears that her only permissible course of action was to remain silent regarding the state's unlawful and corrupt conduct.

In beginning its analysis, the panel accurately states that when a public employee is disciplined for making complaints regarding workplace matters of public concern, a city may escape § 1983 liability only if the employee's action adversely affects the city's interest in efficient management of its operations in a manner that outweighs the plaintiff's interest in bringing the matters to the attention of the public. *See* 123 F.3d at 1224–25 (citing *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708); *see also Hyland v. Wonder*, 972 F.2d 1129, 1139 (9th Cir.1992), *cert. denied*, 508 U.S. 908, 113 S.Ct. 2337, 124 L.Ed.2d 248 (1993). But the panel's willingness to follow—or even to acknowledge—precedent abruptly ends there.

It is elementary First Amendment law that "[t]he more tightly the First Amendment embraces the speech the more vigorous a showing of disruption must be made." *Hyland*, 972 F.2d at 1139 (citing *Connick*, 461 U.S. at 150, 103 S.Ct. at 1692). Yet while it purports to "balance" the parties' interests, the panel completely fails to consider or discuss the importance of Rendish's interest. If it had acknowledged that interest, it would have had to recognize that actions that "seek to bring to light actual or potential wrongdoing or breach of public trust" are matters not only of vital importance to the individual but of *great public concern* as well. *See Connick*, 461 U.S. at 148, 103 S.Ct. at 1691. Rendish's state lawsuit involved the City's attempt to suppress her statements exposing corruption, discriminatory hiring, and disparate treatment; it was, therefore, of great public concern and entitled to an extremely high level of protection.

Even worse, in siding with the City, the panel finds Rendish's actions "most disruptive" because she charged the City with violating the "core" of its mission by "deliberately violating the law." 123 F.3d at 1225. Yet this court has unequivocally held that, under *Connick* and *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), any disruption resulting from a government entity's improper or unlawful actions affects a *wholly illegitimate* interest, which *cannot* weigh in favor of the government. "Defendants cannot rely on disruption which they instigated or exacerbated to outweigh [the plaintiff's] first amendment claims." *Roth v. Veteran's Admin.*, 856 F.2d 1401, 1408 (9th Cir.1988). A governmental entity must "do more than show mere disruption. Instead, it must show actual injury to its *legitimate* interests." *Johnson v. Multnomah County*, 48 F.3d 420, 427 (9th Cir.), *cert. denied*, 515 U.S. 1161, 115 S.Ct. 2616, 132 L.Ed.2d 858 (1995). Under the panel's through-the-looking-glass view of the Constitution, however, the more grave the violation of the government's fundamental obligations, the greater the "disruption" that "necessarily" occurs, 123 F.3d at 1225, and, therefore, the less protection the employee receives for exposing the wrongdoing—or for seeking to be treated in the manner required by law.

The panel's approach is directly contrary to our holding in *Johnson* only two years ago, which remains good law but is not even so much as mentioned by the panel:

An employee who accurately exposes rampant corruption in her office no doubt may disrupt and demoralize much of the office. But it would be absurd to hold that the First Amendment generally authorizes corrupt officials to punish subordinates who blow the whistle simply because the speech somewhat disrupted the office.... In other words, the County does not have a legitimate interest in covering up mismanagement or corruption and cannot justify retaliation against whistleblowers as a legitimate means of avoiding the disruption that necessarily accompanies such exposure. Nor are the County's legitimate interests injured if [the boss] was undermined by truthful statements exposing his own wrongdoing. If we were to hold otherwise, "[s]ome of the most important public employee speech—exposing government corruption, wrongdoing, or incompetence— would be left outside the First Amendment aegis." *Hyland v. Wonder*, 972 F.2d at 1138.

*Id.* at 427 (internal quotation marks and citation omitted); *see also Roth*, 856 F.2d at 1407–08 (same). The principle set forth in *Johnson* and *Roth* renders completely merit-

less the panel's specific examples of disruption due to Rendish's lawsuit—that "Rendish's superiors ... assert that they no longer have confidence in Rendish and speculate that she would no longer follow their directions," and that "the relationship between Rendish and the City is acrimonious," 123 F.3d at 1225.

Indeed, the panel gets it exactly backwards. It is impossible to reconcile the panel's opinion with *Johnson*—and the universal agreement with *Johnson*'s reasoning among all circuits that have confronted the issue.[4] Nor does the panel even try. Instead, it completely ignores not only *Johnson* and *Roth* but the cases decided by the other circuits. As a result, with the failure of a majority of the active judges of this court to cast affirmative votes for an en banc hearing, we create an unprecedented rule of law that would allow city officials, in effect, to *benefit* from their unlawful and discriminatory behavior; the more outrageous their actions, and the more divisive the results, the *greater* their freedom to fire honest civic-minded employees and the greater the immunity from retaliatory discharge claims they will enjoy for their unlawful actions.

The indefensible result reached by the panel in this case illustrates the fundamental absurdity of its holding that the filing of a legitimate lawsuit of public concern is a proper ground for discharging a public employee. The panel fails to recognize that filing a lawsuit, unlike merely speaking out, is a special "manner," *Connick*, 461 U.S. at 152, 103 S.Ct. at 1692–93, of First Amendment expression that is entitled to even greater protection than ordinary First Amendment speech. That special "manner" involves the use of the Petition Clause, a unique process for resolving disputes between individuals and the government, explicitly established by the Constitution. Here, the plaintiff invoked that process by resorting to the courts, the final arbiter of legal rights in a law-abiding society.

The panel's feeble justification for ignoring the impact of the Petition Clause consists of its recitation out of context of the Supreme Court's dicta from *McDonald v. Smith*, 472 U.S. 479, 485, 105 S.Ct. 2787, 2791, 86 L.Ed.2d 384 (1985), that "[t]he right to petition is cut from the same cloth as the other guarantees of [the First] Amendment." *McDonald*, however, had absolutely nothing to do with the use of the *courts* by public employees or others. Rather, the case concerned the question whether a libelous letter written to President Reagan about a U.S. attorney candidate deserved special protection because it could be characterized as a "petition." When a public employee seeks *access to the courts*—the forum established by the government for aggrieved persons to obtain redress for injuries inflicted upon them by the government—something far more than even free expression is at stake. The very right to require the government to obey the law and to redress the injuries it causes its citizens is at issue. That right may not be lightly limited—or made to serve as the basis for punitive or retaliatory governmental action.

The panel also makes it appear that its holding that a public employee may be fired for availing himself of the right to seek judicial relief when the government acts unlawfully is in line with the law in a majority of the circuits. "The Third Circuit alone," it claims, "has diverged from the other circuits and has held that a public employee is protected under the Petition Clause against retaliation for having filed a lawsuit." 123 F.3d at 1222. In fact, only *one* circuit, the Seventh, has stated that a public employee might, under some circumstances, be fired for filing a good faith lawsuit regarding a matter of public concern. *See Zorzi v. County of Putnam*, 30 F.3d 885, 895–96 (7th Cir. 1994). But even that circuit has *never* upheld such a termination; nor has it ever intimated that a governmental employer could escape liability for any such termination on the basis of a workplace disruption caused by its own unlawful conduct. *See,*

---

4. *See O'Donnell v. Yanchulis*, 875 F.2d 1059, 1062 (3rd Cir.1989); *Conaway v. Smith*, 853 F.2d 789, 797 (10th Cir.1988); *Hughes v. Whitmer*, 714 F.2d 1407, 1423 (8th Cir.1983), *cert. denied,* 465 U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984); *Porter v. Califano*, 592 F.2d 770, 773–74 (5th Cir.1979).

*e.g., id.* at 898; *Marshall v. Allen,* 984 F.2d 787, 797 n. 8 (7th Cir.1993). The only circuit other than the Seventh to address the question whether a public employee can be fired for filing a good faith lawsuit answered with a resounding "no." *See San Filippo v. Bongiovanni,* 30 F.3d 424, 434–43 (3rd Cir.), *cert. denied,* 513 U.S. 1082, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995). In fact, the Third Circuit extended its reasoning to matters of private concern as well. Whether or not we should extend First Amendment protection that far, certainly the Third Circuit is right that, at least when a petition takes the form of lawsuit, "the mere fact of filing a non-sham petition is not a constitutionally permissible ground for discharge of a public employee." *Id.* at 443.[5]

I believe that, under the Constitution, the government cannot fire an employee for utilizing the courts to seek redress for injuries involving matters of public concern. I further believe that any "disruption" in the workplace that "necessarily" results from the exposure of the government's own unlawful conduct cannot outweigh the individual's First Amendment rights or the public's interest in the matter. I would hope that a majority of this court will see the wisdom of these far from novel constitutional precepts the next time we have the opportunity to reconsider the holding we erroneously permit to become circuit law today.

---

**5.** All other cases cited by the panel that have upheld the discharge of a public employee have carefully noted, in line with the Court's emphasis in *Connick,* 461 U.S. at 149, 153, 103 S.Ct. at 1691, 1693, that the employees (1) complained of matters of purely private concern and (2) often pursued internal grievance procedures, thereby rendering their grievances less worthy of First Amendment protection. *See Valot v. Southeast Local Sch. Dist. Bd. of Educ.,* 107 F.3d 1220 (6th Cir.) (matter of private concern pursued in workers' compensation claim), *cert. denied,* —— U.S. ——, 118 S.Ct. 164, 139 L.Ed.2d 108 (1997); *Grabow v. Independent Sch. Dist. No. 1–008,* 86 F.3d 1166 (10th Cir.1996) (table) (claim concern-ing matter of private concern, i.e., alleged failure to accommodate disability, ruled unmeritorious by EEOC and court and that was unrelated to employee's discharge); *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1060–61 (2d Cir.1993) (internal personnel complaints which, in any event, were not the cause of firing); *Day v. South Park Indep. Sch. Dist.,* 768 F.2d 696 (5th Cir.1985) (matter of private concern pursued in internal grievance to teacher's superior).

