**Elmer SKAARUP, Plaintiff–Appellant,**

v.

**CITY OF NORTH LAS VEGAS, Defendant–Appellee.**

**No. 01–17364.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2002.

Filed Feb. 28, 2003.

Kirk T. Kennedy, Las Vegas, NV, for the plaintiff-appellant.

Robert Freeman, Las Vegas, NV, for the defendant-appellee.

Before NOONAN, BERZON and TALLMAN, Circuit Judges.

Opinion by Judge NOONAN; Dissent by Judge BERZON.

## OPINION

NOONAN, Circuit Judge.

Elmer ("Joe") Skaarup appeals from the grant of summary judgment to the City of North Las Vegas (the City) in his suit alleging abridgment of his right to free speech. We hold that there are no material issues of disputed fact and that, on the facts established, there was neither abridgment of Skaarup's exercise of speech nor retaliation for this lawsuit.

## FACTS

In early December 1997, Skaarup, then the Chief Fire Marshall of the City, was advised that two of the five inspector positions in his department would be eliminated by the City. One of the two positions was held by a woman, Mary Griego. Griego later called Skaarup in distress that she was being transferred to Planning with what she thought was a substantial loss of salary. Skaarup called his own superior, Fire Chief Michael Massey, to find out what was going on. Massey told him that he "had no idea" but "that a deal must have been struck between IAFF 1607 [the Union] and City Management." Massey added that the elimination of inspectors "shows the pattern of how [Deputy City Manager Patrick] Importuna treats employees and deals with the union."

At a staff meeting the following day, Chief Massey said that the union would fight for Griego's job. He also told Skaarup "that he was not surprised that the City had developed a pattern of conduct toward female employees." Skaarup was upset personally and upset because Dominic Gonzales, the man transferred out of his unit, and Mary Griego were his "best producers." Skaarup at no time spoke to the women Massey claimed were part of this pattern about whether they felt they had been victims of discrimination.

On December 11, 1997, Skaarup called Captain Stephanie Wuthrich into his office and, separately, Engineer Terri Tarbett. Neither of these employees of the City's fire department were in his unit. Skaarup said he called them in because "I like both of them. I wanted to find what their opinions were. What their insight might be. And that's why I did it." As he repeated in his deposition as to Wuthrich, "This was a private conversation ... I wanted to get her take on this. I wanted to see how somebody else viewed this." The conversation with Wuthrich lasted only a few minutes.

Skaarup told Wuthrich and Tarbett that the Union had "sold Mary Griego down the road" and that her elimination was an example of Deputy City Manager Importuna firing women over forty who were single heads of households. Skaarup ascribed this view to Fire Chief Massey and said, "Massey's right, they're targeting women." Running into Wuthrich in the hall later, Skaarup talked to her in the captains' hall, where others were present, about why government would operate this way, referring to the transfers of both Griego and Gonzalez. In January 1995, Wuthrich and Tarbett sent memos to Importuna relating the substance of their conversations with Skaarup; the women did not express an opinion on what they had heard.

On April 28, 1998, Skaarup was charged with violating the Fire Department's Rules of Conduct, Administrative Regulations, § 1005. A disciplinary hearing was held on May 5, 1998, with Skaarup and his lawyer present. On May 21, 1998, the new Fire Chief, Robert Dodge, sustained the charges against Skaarup. Chief Dodge found the statement about the Union making a deal to be untrue and the statement about a discriminatory pattern being established by Importuna to be untrue. The Chief found both statements

derogatory of City Management, "so disrespectful of your employer as to seriously impair the maintenance of discipline, undermine City Management and discredit the Fire Department," and divisive in relation to the Union. Taking into account two previous occasions on which Skaarup had been disciplined (for abusive speech to an employee and for setting fire to a homeless person's camp and belongings), the Chief suspended Skaarup without pay for eight days. Skaarup did not appeal. It is out of this suspension that Skaarup has made a federal case.

On April 7, 1999, the City Council voted to approve an independent audit of all the City's departments, to be conducted by Ralph Anderson & Associates, a national consulting group. On October 5, 1999, the consultants filed their report. It included 92 recommendations as to budget, financial management, restructuring of several city departments, the addition and deletion of various staff positions, and a reallocation of the resources of the Fire Department, including the reclassification of the Fire Marshall to Fire Inspector.

The day the report was presented, the City Council voted to accept it and directed staff to begin to implement its recommendation. On February 15, 2000, Skaarup was informed that the reclassification of his position to the lower position of Fire Inspector would be carried out.

## PROCEEDINGS

On July 26, 1999, Skaarup filed this suit. On April 10, 2000, he amended his complaint to charge that the reclassification of his position was retaliation for the suit. He alleged, under 42 U.S.C. § 1983 and the Nevada Constitution, violation of his free speech rights; breach of the implied covenant of good faith and fair dealing; and "retaliatory conduct," without refer-

ence to any particular statute or constitution.

On June 28, 2001, Skaarup moved for partial summary judgment on his free speech claim. On June 29, 2001, the City moved for summary judgment on all claims. On October 9, 2001, the district court denied Skaarup's motion and granted the City's motion. The court applied "a balancing test" to Skarrup's First Amendment claim. The court doubted that Skaarup's comments were of public concern when he took no steps to make them public knowledge. On the other side of the balancing test, the City had a right to run an efficient fire department and Skaarup's comments were divisive in a way that "would affect the efficient operation and morale" of the department. The court held there was no violation of Skaarup's right to free speech, no breach of the implied covenant of good faith, and no evidence that the city-wide audit was a ruse to target Skaarup.

On November 8, 2001, Skaarup filed this appeal.

## ANALYSIS

■ Two elements of Skaarup's free speech claim are established beyond dispute: he incurred the adverse employment action of eight days suspension, and he incurred it because of his speech. *See Ulrich v. City and County of San Francisco*, 308 F.3d 968, 976 (9th Cir.2002). A portion of his speech—that the City was discriminating against women and particularly women over 40—touched on a matter of public concern. *See id.* Therefore, it was appropriate for the district court to balance his right to speak against the City's interest in effective government.

■ The balancing that must be undertaken to find constitutional protection for the speech is "particularized" and depends "upon the nature of the employee's expression." *Connick v. Myers*, 461 U.S. 138,

150, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." *Id.* at 152–53, 103 S.Ct. 1684.

Skaarup spoke privately to two individuals; he made no effort either to address the allegations with his superiors or to make them public. *Compare Gilbrook v. City of Westminster*, 177 F.3d 839, 867 (9th Cir.1999) *and Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 981(9th Cir.1998). Skaarup was given the opportunity to present to the City of North Las Vegas anything relevant to the incident at his May 5, 1998 hearing. He presented no evidence at that hearing that he spoke to Tarbett and Wuthrich because of their expertise in women's issues. At the time of his suspension, the City had had no reason to believe that he had contacted these women because of their connection with the women firefighter's group; that assertion, emerged only in his deposition in this case a year and eight months later. The January 1998 memos from Tarbett and Wuthrich to Importuna do not indicate in the slightest that Skaarup approached them because of their interest in equal employment issues.

■ Furthermore, when Skaarup made his statements, he lacked the first-hand knowledge of the truth of the allegations. No per se rule exists that speech to be protected must be truthful. *Johnson v. Multnomah County*, 48 F.3d 420, 424(9th Cir.1995). But it is equally clear that untruthful information about government is not helpful to the public. In this case, after a hearing from which he did not appeal, Skaarup was found to have made untruthful statements about the policy of the City and about the Union representing the firefighters. While latitude is extended to inexactitude in political discourse, the

public interest in such unsubstantiated rumors is small. At best, Skaarup was taking sides with Fire Chief Massey in a dispute with Deputy City Manager Importuna, in the course of which Massey seized on the transfer of two employees, one a woman and the other a man, to try to make the issue one of gender. The public interest in bureaucratic infighting is also small.

On the other side of the balance was the City's interest in not disrupting relations with the Union, the City's interest in protecting the good name of its deputy city manager, and the City's interest in not having its own reputation besmirched by comments attributed to its fire chief. The City's interest was heightened by Skaarup's relatively prominent position and his quotation of an even higher city official, the fire chief. *See Pool v. Vanrheen,* 297 F.3d 899, 908 (9th Cir.2002). As a matter of law, these interests of the City outweighed Skaarup's right to retail the fire chief's and his own suspicions, especially given the narrow focus and the limited audience of two to whom Skaarup spoke. *Gilbrook,* 177 F.3d at 868.

The second cause of action, for breach of the covenant of good faith and fair dealing, falls with the first. The third cause of action, for retaliation, is entirely unsupported. It seeks to turn a city-wide reorganization, based on a study initiated before this lawsuit, into the satisfaction of a grudge against Skaarup. The lack of showing here is attributed to a cutoff of discovery, but Skaarup had nearly two months to investigate the facts before he made this baseless addition to his suit.

AFFIRMED.

BERZON, Circuit Judge, dissenting:

The majority's opinion does not give appropriate weight to two key facts that weigh in favor of finding Skaarup's speech protected under the balancing test enunciated in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). First, the individuals with whom Skaarup spoke "privately" were not just any co-workers. They were an audience chosen because of their expertise on and interest in issues of equal employment. Second, Skaarup was not promulgating "unsubstantiated rumors" but was repeating information given him by the Fire Chief, his immediate superior. These two considerations, when properly placed on the scales, are sufficient to tip the balance sharply in favor of constitutional protection. I therefore respectfully dissent.

The majority finds it significant that Skaarup's speech occurred in the context of private conversations with Terri Tarbett and Stephanie Wuthrich, and that Skaarup "made no effort to either address the allegations with his superiors or make them public." But the law imposes no requirement that an employee's speech on matters of public concern be aired to superiors or publicly expressed. The First Amendment protects speech on matters of public concern uttered in private conversations between employees. *See Givhan v. Western Line Consolidated Sch. Dist.,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (9th Cir.1979); *Ulrich v. City and County of San Francisco,* 308 F.3d 968, 979 (9th Cir.2002); *Nunez v. Davis,* 169 F.3d 1222, 1228 (9th Cir.1999).

After hearing from Fire Chief Massey that the City and the union had sacrificed Mary Griego's job and that Deputy City Manager Importuna had a pattern of getting rid of women employees, Skaarup approached Wuthrich and Tarbett to discuss the matter. Wuthrich and Tarbett, relatively high-ranked women employees of the Fire Department, had represented the City of North Las Vegas Fire Department

at national women firefighters' conventions. In his deposition, Skaarup indicated that Wuthrich and Tarbett's interest in women firefighters' issues was the reason he approached them:

A: Captain Tarbett ... was our representative to the women's firefighters meeting. She had a good grasp on women's issues in the fire service, and I wanted her opinion.

Q: Okay. So the purpose for you talking to Captain Tarbett was you wanted to solicit information from her to get her read on the situation, much like you had from Captain Wuthrich?

A: Yes.

Q: And you said she was a representative to the women firefighters' meeting? What is the women's firefighters meeting?

A: I'm not altogether sure of the circumstances, but they have a group—like they have the black firefighters meetings, and you have the Hispanic firefighters meetings, they have a women's firefighters group that gets together. One year both Terri Tarbett and Stephanie Wuthrich went to it. One year Stephanie went to it, and I believe your last representative was Tarbett.

Wuthrich's and Tarbett's public roles as representatives of women firefighters made them uniquely appropriate persons with whom to discuss allegations of gender discrimination in the Fire Department. Skaarup recognized as much in choosing to share the allegations of gender discrimination in the Department with them.

The audience Skaarup chose indicates that his speech rose above the level of mere rumor-mongering. In addressing Wuthrich and Tarbett, Skaarup directed his statements to persons, who, because of their publicly-demonstrated interest in the status of women firefighters, were likely to take an interest in and act upon allegations of gender discrimination. *See Ulrich,* 308

F.3d at 979(doctor's airing of his concerns about layoffs at hospital staff meetings and posting a letter expressing concerns at nurses' station "indicate that he spoke 'in order to bring wrongdoing to light,' not 'merely to further some purely private interest'" (quoting *Havekost v. United States Department of Navy,* 925 F.2d 316, 318(9th Cir.1991))). In balancing the value of Skaarup's "private" speech against the City's interest in suppressing it, the majority should have accounted for Wuthrich's and Tarbett's involvement in women firefighters' issues.

The majority also fails to acknowledge the significance of the source of Skaarup's information about alleged gender discrimination in the fire department. That source was Skaarup's immediate superior, Fire Chief Massey. As the current Fire Chief, Massey was surely a credible source of information about City Hall actions affecting the department. So, although Skaarup may have lacked first-hand knowledge of the existence of gender discrimination in the Fire Department, he had little reason to doubt the information relayed to him. Skaarup could legitimately believe that Massey's theories about dealcutting and discrimination at City Hall were substantiated, especially when Massey could name several women who had been recently dismissed or driven out of City employment.

Although the majority does not question the determination made at Skaarup's disciplinary hearing that his statements were untruthful, the City presented no evidence in the hearing or in the record before us that the allegations of gender discrimination made by Massey and disseminated by Skaarup were in fact untrue. The disciplinary hearing determination that Skaarup's statements were untruthful was presented in an entirely conclusory manner, without elucidation of factual support for

the judgment that Skaarup had spoken untruthfully.

Even if the information relayed by Skaarup was untruthful, under our decision in *Johnson v. Multnomah County*, 48 F.3d 420 (9th Cir.1995), the truthfulness of an employee's statements must be weighed as only one of several factors in balancing that employee's interest in speech against the employer's interests in maintaining office discipline. *Johnson* dictates that recklessly-made false statements must be considered in light of the *actual damage* done by the dissemination of untruthful information. *Id.* at 424.

The City has made no showing that anyone believed Skaarup's statements. In fact, record evidence shows that Tarbett and Wuthrich openly expressed their disagreement with Skaarup's statement that the union had made a deal with the city and "sold Mary Griego down the road." Moreover, the City and the union could have easily rebutted Skaarup's statements by taking action to clarify why Griego was transferred, or by issuing actual facts to refute charges of discrimination, such as publicizing in a memorandum the actual numbers of women in the Fire Department or City workforce. The record does not indicate that the City took any action to dispel the damage allegedly caused by Skaarup's speech.

Although City officials assert that Skaarup's statements were "inflammatory and devisive [sic] in their nature and each separately posed a real threat to working harmony within the Fire Department," the City provides no evidence that Skaarup's speech *actually* generated divisiveness or disruption. *See Voigt v. Savell*, 70 F.3d 1552, 1560 (9th Cir.1995) (government must show "real, not imagined disruption" caused by employee speech; assertion of close working relationships cannot serve as "a pretext for stifling legitimate speech or penalizing public employees for expressing unpopular views"). Further, if there were any disruption caused by Skaarup's speech, the disruption was traceable to misinformation provided by his immediate supervisor.

It appears, indeed, that internal disharmony—between the Fire Chief and the Deputy City Manager—already existed. In essence, Skaarup was discharged for choosing to side with one faction rather than the other in a higher-level power struggle, not for himself *creating* dissonant working relationships *within* the Fire Department. Under these circumstances, the City's purported "interest in promoting harmony among co-workers" can become a euphemism for an interest in imposing uniformity of thought and opinion among its employees citywide. That interest is one that is at odds with the values underlying the First Amendment and weighs for rather than against constitutional protection for the offending speech.

The City has therefore not met its burden to demonstrate that concrete management interests outweighed Skaarup's First Amendment interest in discussing possible gender discrimination in the Fire Department. *See Bauer v. Sampson*, 261 F.3d 775, 784 (9th Cir.2001) ("Once a plaintiff shows that his statements were of public concern and that the statements were a substantial motivating factor for the disciplinary action taken against him, the burden shifts to the defendant to show that its legitimate administrative interests outweigh the plaintiff's First Amendment rights.")

In sum, the majority minimizes critical facts that augment the First Amendment value of Skaarup's speech and weaken the City's allegations of disruption caused by the speech. Once these facts are weighed, the balance tips in favor of protecting Skaarup's speech. Because the majority failed to consider all relevant facts and

accord them due weight in balancing employer interests in discipline and harmony against employee interests in speech on matters of public concern, I respectfully dissent.